Case No. 15-1336

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| ROCKY MOUNTAIN GUN OWNERS, a Colorado non-profit corporation, and COLORADO CAMPAIGN FOR LIFE, a Colorado non-profit corporation, | |
| Plaintiffs-Appellants, | |
| v. | |
| WAYNE W. WILLIAMS, in his official capacity as Secretary of State for the State of Colorado, and CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, a Delaware non-profit corporation, trading as Colorado Ethics Watch, | |
| Defendants-Appellees. | |

On Appeal from the United States District Court
For the District of Colorado

The Honorable Robert E. Blackburn
District Judge

D.C. No. 14-cv-02850-REB-KLM

## THE SECRETARY OF STATE'S ANSWER BRIEF

CYNTHIA H. COFFMAN
Attorney General

_s/  LeeAnn Morrill_

LEEANN MORRILL*
First Assistant Attorney General
Public Officials Unit
State Services Section
_Attorneys for Colorado Secretary of_
  _State Wayne W. Williams_

Ralph L. Carr Colorado Judicial
  Center
1300 Broadway, 6th Floor
Denver, Colorado  80203
Telephone:  (720) 508-6159
FAX:  (720) 508-6041
E-Mail:  leeann.morrill@state.co.us
*Counsel of Record

## STATEMENT REGARDING ORAL ARGUMENT

Counsel requests oral argument.

Filed: December 7, 2015.

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE ARGUMENT ..........................................................2

STANDARD OF REVIEW...................................................................3

ARGUMENT ....................................................................................4

   I.   The district court considered and applied the "exceptional circumstances" factor in deciding that *Younger* abstention was warranted.................................................................................4

   II.   The district court properly abstained because the state court administrative proceeding against RMGO and CCFL was a "civil enforcement" action "akin to a criminal prosecution."..........................8

      A.   The administrative proceedings against RMGO and CCFL were brought to penalize them for violating Colorado's campaign finance laws and to enforce the provisions of same. ....................................11

      B.   The administrative proceeding in *Sprint* involved the adjudication of a purely private dispute between the parties; this case does not.................................................................................16

      C.   RMGO and CCFL's reliance on a slew of other inapposite cases is unavailing, as is their overstatement of *Sprint's* impact on the *Younger* abstention doctrine. .........................................................19

CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Acra Turf Club, LLC v. Zanzuccki*, 748 F.3d 127 (3d Cir. 2014) ........... 19

*Bolton v. Bryant*, No. 14C03580, 2014 U.S. Dist. LEXIS 149252
(N.D. Ill. 2014) ................................................................................ 20

*City of Colo. Springs v. Solis*, 589 F.3d 1121 (10th Cir. 2009) .............. 10

*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995) ............................... 4

*Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253
(10th Cir. 2002) ................................................................................ 3

*Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ............................................................... 4, 9

*Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811
(7th Cir. 2014) ................................................................................ 19

*NCAA v. Corbett*, 25 F. Supp. 3d 557 (M.D. Pa. 2014) ........................... 20

*New Orleans Public Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) ........................................................................ 11

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
477 U.S. 619  (1986) ................................................................ 6, 7, 11

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320
(6th Cir. Ohio 1990) .......................................................................... 4

*Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000) ......................................... 15

*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*,
754 F.3d 754, 756 (9th Cir. 2014) .................................................... 20

ii

# TABLE OF AUTHORITIES

**PAGE**

*Savina Home Indus., Inc. v. Secretary of Labor*, 594 F.2d 1358
(10th Cir. 1979) ....................................................................... 15

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584 (2013) .................. passim

*State Farm Fire & Gas Co. v. Mhoon*, 31 F.3d 979
(10th Cir. 1994) ....................................................................... 10

*Taylor v. Jaquez*, 126 F.3d 1294 (10th Cir. 1997) .................................. 11

*Torres v. DeMatteo Salvage Co., Inc.*, No. 14-cv-00774, 2014 U.S. Dist.
LEXIS 107188, *16 (E.D.N.Y. Aug. 4, 2014) (unpublished) ............... 20

*Wis. Mfrs. & Commerce v. Wis. Elections Bd.*, 978 F. Supp. 1200
(W.D. Wis. 1997) ....................................................................... 16

*Younger v. Harris*, 401 U.S. 37 (1971), ........................................... passim

## CONSTITUTIONS
Colo. Const. art. XXVIII, § 1 .................................................... 12
Colo. Const. art. XXVIII, § 9(2)(a) ........................................... passim
Colo. Const. art. XXVIII, § 10(d) ............................................. 13
Colo. Const. art. XXVIII, § 10(2)(a) ......................................... 13, 14
Colo. Const. art. XXVIII, § 10(2)(d) ......................................... 14

## STATUTES
§ 24-30-202.4, C.R.S. (2015) .................................................... 13

## RULES
Fed. R. Civ. P. 12(b)(1) ......................................................... 3, 8, 22

# TABLE OF AUTHORITIES

**PAGE**

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 578 (2d pocket ed. 2001) ...............................14

Trevor W. Morrison, *Private Attorneys General and the First Amendment*, 103 Mich. L. Rev. 589, 598-601 (2005)...........................14

Defendant-Appellee, Wayne W. Williams, in his official capacity as Colorado Secretary of State (the "Secretary"), by and through undersigned counsel, hereby submits his Answer Brief in response to Plaintiffs-Appellants' Opening Brief.

## SUMMARY OF THE ARGUMENT

The district court properly applied the abstention doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971), in dismissing Plaintiffs-Appellants', Rocky Mountain Gun Owners ("RMGO") and Colorado Campaign for Life ("CCFL"), complaint challenging the constitutionality of certain state campaign finance disclosure laws, including the civil enforcement scheme under Colo. Const. art. XXVIII, § 9(2)(a).  Not only did the district court consider *all* of the requisite *Younger* factors reaffirmed by the Supreme Court in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584 (2013), it also applied each of the factors correctly to this case.  As a result, this Court should affirm the district court's dismissal of RMGO and CCFL's constitutional claims under Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

The Secretary agrees that this Court reviews the district court's legal conclusions in applying the *Younger* abstention doctrine on a *de novo* basis. *Opening Brief*, at 7 (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1266 (10th Cir. 2002)). However, as the district court correctly explained in its November 3, 2015 Order dismissing RMGO and CCFL's complaint, the Secretary's motion to dismiss "present[ed] a factual attack" on subject matter jurisdiction, which empowered it to "consider affidavits and other documents to resolve disputed jurisdictional facts" without converting the motion to one for summary judgment. (Aplt. App. at 280). And the district court did just that in deciding to grant the Secretary's motion to dismiss. (Aplt. App. at 280-81 (referring to the state court administrative complaint against RMGO and CCFL, and citing to the administrative law judge's final decision regarding same, as support for several "Background" facts)). This Court therefore reviews any "findings of jurisdictional facts for clear error." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)

3

(citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir. Ohio 1990)).

## ARGUMENT

### I.    The district court considered and applied the "exceptional circumstances" factor in deciding that *Younger* abstention was warranted.

RMGO and CCFL contend that the district court erred by failing to consider and apply the "exceptional circumstances" *Younger* factor discussed by the Supreme Court in *Sprint* and, instead, focused solely on the *Younger* factors established by the Supreme Court in *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (Namely, that if, at the time the federal case is filed, there was (1) "an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provide[s] an adequate opportunity to raise [federal] challenges," then abstention under *Younger* is appropriate.).  *Opening Brief*, at 8-15; *Sprint*, 134 S.Ct. at 588.  This contention should be rejected because it is contradicted by the record before this Court.

In its analysis of the Secretary's *Younger* defense, the district court's November 3, 2015 Order recognized that, "[i]n *Sprint*, the

4

Supreme Court of the United States summarized the three types of
[exceptional] proceedings in which a federal court should refuse to
decide a case in deference to a parallel state proceeding," and then
identified the "three types" as: (1) "ongoing state criminal
prosecutions"; (2) "civil enforcement proceedings with a 'quasi-criminal'
criminal [sic] nature"; and (3) "pending state civil proceedings involving
orders uniquely in furtherance of the ability of state courts to perform
their judicial functions." (Aplt. App. at 282 (citing *Sprint*, at 134 S.Ct.
584, 591)). The district court further recognized that civil "enforcement
actions are 'characteristically initiated to sanction the federal plaintiff,
*i.e.* the party challenging the state action, for some wrongful act.'"
(Aplt. App. at 282 (quoting *Sprint*, at 134 S.Ct. 592)).

   After expressly concluding that "the second category, civil
enforcement proceedings," was "the only category with potential
application in this case," the district court went on to analyze "examples
of such civil enforcement proceedings which the [Supreme] Court has
found to be subject to *Younger* abstention." (Aplt. App. at 282).
Specifically, it analyzed *Younger's* application to certain civil

enforcement proceedings that had been discussed by the Supreme Court with approval in *Sprint*, and expressly upheld by the Supreme Court in *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619 (1986). (Aplt. App. at 282-85 (citations and quotations omitted)).

Putting aside, for the moment, whether the district court correctly analyzed and applied the holdings of those Supreme Court cases, which will be addressed in Section II below, the record demonstrates that the district court fully considered whether "exceptional circumstances" mandating abstention exist here. In the underlying proceeding, Defendant-Appellee, Citizens for Responsibility and Ethics in Washington, a Delaware non-profit corporation, trading as Colorado Ethics Watch ("CEW"), filed an administrative complaint under Colo. Const. art. XXVIII ("Article XXVIII"), § 9(2)(a), alleging that RMGO and CCFL failed to comply with certain campaign finance disclosure laws. The record discussed above demonstrates that the district court fully considered whether the administrative proceeding against RMGO and CCFL was a civil enforcement action because it was "quasi-criminal" nature.

6

And after fully considering the Supreme Court's precedent regarding what types of civil enforcement actions warrant *Younger* abstention, the district court expressly made the following factual findings in support of its legal conclusion that the Article XXVII, § 9(2)(a) administrative proceeding was initiated for the "quasi-criminal" purpose of sanctioning RMGO and CCFL for their wrongful acts in violation of Colorado's campaign finance laws:

> First, in both *Dayton Christian Schools* and the present case, a private entity filed a complaint which triggered an enforcement action by a state official.  Here, CEW filed a complaint, similar to a *qui tam* complaint, with the Colorado Secretary of State.  As in *Dayton Christian Schools*, *the complaint triggered a state official to engage the enforcement mechanisms provided in state law*.  …Second, as in *Dayton Christian Schools*, the enforcement proceeding pursued by the Secretary of State *concerns enforcement of state law, here Colorado election laws*.

(Aplt. App. 285-86 (emphasis added)).  This legal conclusion is further supported by the factual findings in the district court's November 3, 2015 *Order* that were based on the administrative law judge's December 23, 2014 *Final Agency Decision*, which found that RMGO and CCFL "made reportable electioneering communications, but failed to

7

file the required reports," "imposed a civil penalty requiring each respondent to pay 8,450 dollars," and ordered "them to file the required reports." (Aplt. App. at 281 (quoting *Final Agency Decision*, at Aplt. App. at 269-277)).

For the above reasons, the record in this case amply demonstrates that the district court both considered and applied the "exceptional circumstances" factor in deciding that it must abstain under the *Younger* doctrine. RMGO and CCFL's assertion to the contrary is therefore without merit and must be rejected.

**II.    The district court properly abstained because the state court administrative proceeding against RMGO and CCFL was a "civil enforcement" action "akin to a criminal prosecution."**

Dismissal of RMGO and CCFL's constitutional claims was warranted under Rule 12(b)(1) for the same reasons that the district court denied their motion for a temporary restraining order and preliminary injunction in its December 16, 2014 Order. (Aplt. App. 155-65). Namely, because it correctly concluded that the underlying

8

administrative proceedings were "the type of proceedings entitled to abstention under *Younger*[,]" and therefore such claims were only properly "raised and addressed in proceedings before the Colorado administrative law judge, the Colorado Court of Appeals, and/or the Colorado Supreme Court." (Aplt. App. 165).

And although RMGO and CCFL maintain otherwise in their appeal to this Court, they do so *only* on the basis that the Article XXVIII, § 9(2)(a) administrative proceedings were not "akin to a criminal prosecution." *Opening Brief*, at 15-35; *Sprint*, 134 S.Ct. 592-93 (internal quotation and citation omitted). Put another way, the *Opening Brief* did not also challenge the district court's legal conclusion that all three *Middlesex* factors weighed in favor of its decision to abstain. (Aplt. App. at 285-87). This concession is significant because the success of RMGO and CCFL's appeal now rests entirely on whether this Court agrees with the district court that the underlying administrative proceedings were initiated to "sanction" them for some "wrongful act." *Sprint*, 134 S.Ct. at 592; *see City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (Noting "that arguments not raised in the

9

opening brief are waived." (citing *State Farm Fire & Gas Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994)).

This Court should affirm the district court's decision to abstain for three reasons. *First*, because the State of Colorado, acting by and through its electorate, established a comprehensive campaign finance disclosure scheme that expressly includes a civil enforcement mechanism for the purposes of sanctioning wrongdoers and coercing compliance. *Second*, RMGO and CCFL's heavy reliance on the *Sprint* holding is misplaced because the facts of *Sprint* are distinguishable from the facts of this case. And, *third*, because many of the other cases cited in the Opening Brief are likewise inapposite, and RMGO and CCFL's characterization of the *Sprint* holding's impact on the *Younger* abstention doctrine is unavailing.

A. **The administrative proceedings against RMGO and CCFL were brought to penalize them for violating Colorado's campaign finance laws and to enforce the provisions of same.**

This Court's decisions have recognized that, "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try cases free from interference by federal courts." *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997) (quoting *Younger*, 401 U.S. at 43). And "[t]o assure this end," this Court has further recognized that, "*Younger* articulated a narrow exception now applied to state criminal, *Younger*, 401 U.S. at 37; civil, *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989); or administrative proceedings, *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986), which commands a federal court to abstain from exercising jurisdiction[.]" *Id.* And in cases where proceedings are initiated in either a civil court or an administrative forum, they must be "civil enforcement proceedings" of a "quasi-criminal" nature, which the Supreme Court has held are "characteristically initiated to sanction the

11

federal plaintiff, *i.e.* the party challenging the state action, for some wrongful act." *Sprint*, 134 S.Ct. at 591-93.  Here, the administrative proceedings against RMGO and CCFL were initiated for just such a purpose.

In 2002, Colorado voters passed Amendment 27, a citizen initiative that modified and placed portions of Colorado campaign finance law in the state constitution.  *See* Colo. Const. art. XXVIII. Section 1 of that article declares that:

> *the interests of the public are best served by* . . . *providing for full and timely disclosure* of campaign contributions, independent expenditures, and funding of electioneering communications, and strong enforcement of campaign finance requirements.

Colo. Const. art. XXVIII, § 1 (emphasis added).  Under Article XXVIII, § 9(2)(a), "any person" who believes that certain provisions of Article XXVIII have been violated may file a complaint with the Secretary within 180 days of the alleged violation.  *Id.*  The Secretary must refer the complaint to an administrative law judge ("ALJ") within three days

12

of receipt. *Id.* The presiding ALJ must hold a hearing within 15 days and render a decision within 15 days thereafter. *Id.*

If the ALJ determines that a violation has occurred, "such decision shall include any appropriate order, sanction, or relief authorized by this article." *Id.* An ALJ decision is subject to review by the Colorado Court of Appeals, and a final judgment may be enforced by either the Secretary or the complainant. *Id.* Under Article XXVIII, § 10(2)(a), the ALJ must "impose a penalty of fifty dollars per day for each day that a statement or other information required to be filed . . . is not filed by the close of business on the day due." *Id.* And Article XXVIII, § 10(d) provides that "[a]ny unpaid debt owing to *the state* resulting from a penalty imposed pursuant to this subsection (2) shall be collected by *the state* in accordance with the requirements of section 24-30-202.4, C.R.S, or any successor section." *Id.* (emphasis added).

The State of Colorado, acting by and through its voters, adopted Article XXVIII to protect the public's interest in being an informed electorate, not to secure any private interest. Administrative proceedings initiated under § 9(2)(a) of that article coerce compliance

13

with Colorado's campaign finance laws by requiring ALJs to issue "any appropriate order, sanction, or relief[,]" including the mandatory imposition of monetary penalties under §§10(2)(a) and (d) that inure to the benefit of the *State*, not to any private party. And even though "any person" who believes a violation of certain campaign finance laws has occurred may file and prosecute an administrative complaint, Article XXVIII requires the Secretary to perform an official act to trigger the administrative enforcement proceedings and authorizes the Secretary to enforce any final judgment.

And although CEW, not the Secretary, prepared and prosecuted the administrative complaint, its actions in doing so are akin to a *qui tam* action under common law, which is brought by a private citizen, on the citizen's, as well as the State's, behalf for violation of a civil or criminal statute. *See* BLACK'S LAW DICTIONARY 578 (2d pocket ed. 2001). Courts have long recognized *qui tam* suits as legitimate tools for enforcing the law. *See also* Trevor W. Morrison, *Private Attorneys General and the First Amendment*, 103 Mich. L. Rev. 589, 598-601 (2005) (reasoning that the history of *qui tam* actions "confirms that

14

legislative reliance on uninjured private parties to enforce public-regarding statutes is no recent innovation"); *Osterberg v. Peca*, 12 S.W.3d 31, 48-50 (Tex. 2000) (reasoning that private enforcement of campaign finance laws is designed to deter violators and encourage enforcement by those involved in the process instead of placing the entire enforcement burden on the government).

For these reasons, administrative proceedings under Article XXVIII, § 9(2)(a) are "quasi-criminal" civil enforcement proceedings intended to punish violators and secure compliance with Colorado's campaign finance laws. *Sprint*, 134 S.Ct. at 592; *see accord Savina Home Indus., Inc. v. Secretary of Labor*, 594 F.2d 1358, 1362 n.6 (10th Cir. 1979) (Noting that "[l]aws that provide for punishment but are civil rather than criminal in form have sometimes been labeled 'quasi-criminal' by the Supreme Court.  These laws, broadly speaking, provide for civil money penalties[,]" and suggesting that "[u]nder that definition an argument could be made that OSHA civil penalties constitute quasi-criminal sanctions." (citation omitted)); *Wis. Mfrs. & Commerce v. Wis. Elections Bd.*, 978 F. Supp. 1200, 1207-08 (W.D. Wis. 1997) (abstaining

15

under *Younger* from deciding a First Amendment challenge to campaign finance disclosure laws because of an ongoing administrative enforcement action before the state board of elections).

Accordingly, the district court correctly abstained from interfering in the administrative proceedings against RMGO and CCFL.

> **B.  The administrative proceeding in *Sprint* involved the adjudication of a purely private dispute between the parties; this case does not.**

RMGO and CCFL attempt to analogize the facts of this case to those in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584 (2013), where the Supreme Court declined to abstain under *Younger*.  But the cases are entirely distinguishable.  Unlike the underlying campaign finance enforcement action here, *Sprint* concerned a commercial dispute between two corporate entities.  Specifically, a local telecommunications carrier threatened to block all Sprint customer calls after Sprint withheld payment of the carrier's access fees for Internet-transported telephone calls.  *Id.*, at 588-89.  In response to the local carrier's threat, Sprint sought injunctive relief from the Iowa Utilities Board (the

"Board") to prevent the local carrier from discontinuing service. *Id.*, at 589. Although Sprint eventually withdrew its administrative complaint for injunctive relief, the Board elected to continue the proceedings to decide whether intrastate regulations and fees applied to Internet-transported telephone calls. *Id.*

After the Board determined that intrastate fees applied, Sprint filed state and federal court lawsuits challenging the Board's ruling. *Id.* In response to the federal lawsuit, the local carrier argued, and the district and appellate courts agreed, that abstention was appropriate. *Id.*, at 590. But the Supreme Court reversed because the Board's order was not "an act of civil enforcement of the kind to which *Younger* has been extended." *Id.* at 592. Put another way, Sprint did not commence its administrative action against the local carrier to sanction it for some violation of state law or to coerce the carrier's compliance with same. *See id.*, at 592-93 (reasoning that the Board's adjudicative authority "was invoked to settle a civil dispute between two private parties, not to sanction [a party] for commission of a wrongful act.").

17

Unlike in *Sprint*, CEW did not commence the underlying administrative proceedings here to resolve a private dispute between itself, RMGO, and/or CCFL.  Rather, it did so to enforce Colorado's campaign finance laws after RMGO and CCFL failed to submit required reports and information for disclosure to the *public* as required by law. And after CEW filed its complaint, the Secretary of State forwarded it to the Office of Administrative Courts for adjudication.  (Aplt. App. at 269-70).  The presiding ALJ held a hearing on December 17, 2014, and issued a *Final Agency Decision* on December 23, 2014, determining that RMGO and CCFL "violated reporting obligations imposed by the fair campaign practice laws," sanctioning their wrongdoing by requiring each to pay a civil penalty in the statutorily-permitted amount of $8,450, and ordering each to file the reports required by Colorado law. (Aplt. App. at 270, 279).

These factual differences demonstrate that the administrative proceedings at issue in *Sprint* were not initiated to penalize the local carrier for violating Iowa law, or to coerce the local carrier to comply

18

with same, and therefore are simply inapposite to the civil enforcement

proceedings at issue here.

> **C.   RMGO and CCFL's reliance on a slew
> of other inapposite cases is unavailing,
> as is their overstatement of *Sprint's*
> impact on the *Younger* abstention
> doctrine.**

In an attempt to further support RMGO and CCFL's contention

that *Younger* abstention does not apply, the Opening Brief cites to a

slew of other inapposite cases.  *See Opening Brief*, at 20-25, 30-33.  But

unlike the administrative proceedings against RMGO and CCFL in this

case, none of the following six cases cited in the Opening Brief involved

quasi-criminal civil enforcement proceedings:

- *Acra Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 129-31; 138-41 (3d Cir. 2014) (Holding that abstention was inappropriate because the proceeding before the state commissioner was not commenced to penalize off-track wagering facilities for violations of state law, but rather to incentivize increased licensing of facilities.);

- *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 813, 817-19 (7th Cir. 2014) (Abstention from action to enjoin enforcement of limitations on the distribution of certain candidate endorsement lists was inappropriate because: (1) the election board's investigation was "at too preliminary a stage to

19

warrant federal deference"; (2) the board lacked prosecutorial power because its investigation could only lead to a recommendation of discretionary prosecution by the county attorney or the state attorney general; and (3) a federal court had previously declared the at-issue statute facially unconstitutional.);

- *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 756, 759-60 (9th Cir. 2014) (Abstention was inappropriate because the underlying proceeding before the state insurance commissioner concerned an employer's dispute regarding the application of state law to an insurance agreement.);

- *NCAA v. Corbett*, 25 F. Supp. 3d 557, 560-62; 566-67 (M.D. Pa. 2014) (Declining to abstain because the underlying proceeding sought compliance with a non-punitive state statute.);

- *Torres v. DeMatteo Salvage Co., Inc.*, No. 14-cv-00774, 2014 U.S. Dist. LEXIS 107188, at *16 (E.D.N.Y. Aug. 4, 2014) (unpublished) (Declining to abstain because the underlying wrongful termination action did not involve "adjudicative authority invoked to sanction the federal plaintiff for commission of a wrongful act."); and

- *Bolton v. Bryant*, No. 14C03580, 2014 U.S. Dist. LEXIS 149252, at *24-25 (N.D. Ill. 2014) (Declining to abstain because the denial of a concealed carry permit in the underlying proceedings did not entail sanctioning wrongful conduct.).

The above cases therefore add little or no value to this Court's

review of the propriety of the district court's abstention under *Younger*

in this case, and should be weighed accordingly.

20

Finally, it is important to recognize that, for thematic purposes, RMGO and CCFL overstate the effect of the Supreme Court's holding in *Sprint* on the *Younger* abstention doctrine. *See*, *e.g.*, *Opening Brief*, at 24 ("The net result of these [post-*Sprint*] decisions, in addition to the guidance in *Sprint*, is that a significant quantum and quality of state action is required in order to fairly characterize administrative proceedings as 'civil enforcement' subject to the *Younger* doctrine."). But that is not, in fact, the "net result" of any post-*Sprint* decision issued by either this Court or the Supreme Court. Indeed, the Opening Brief cites none. *See Opening Brief*, at 20-25, 30-33.

And while RMGO and CCFL correctly concede that "the Supreme Court has not directly held that *Younger* applies only when a state actor files a complaint or formal charges," that concession is followed by their assertion that "the overwhelming weight of post-*Sprint* jurisprudence suggests that the state must take some meaningful role in enforcing its law in order to qualify as a 'civil enforcement' proceeding." *See Opening Brief*, at 24.

21

These contentions are based largely on the Supreme Court's acknowledgement in *Sprint* that "[i]n cases of [the civil enforcement] genre, a state actor is *routinely* a party to the state proceeding and *often* initiates the action." 134 S.Ct. at 592 (emphasis added). But the words "routinely" and "often" are not synonymous with "always" and, therefore, the *Sprint* decision left ample room open for administrative proceedings like Colorado's to qualify as "quasi-criminal" civil enforcement actions.

## CONCLUSION

This Court should affirm the district court's decision to dismiss the complaint under Rule 12(b)(1) on *Younger* abstention grounds.

## STATEMENT REGARDING ORAL ARGUMENT

The Secretary requests oral argument. This case involves the application of the Supreme Court's decision in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584 (2013), which has not yet been addressed by this Court.

Respectfully submitted this 7th day December, 2015.

CYNTHIA H. COFFMAN

Attorney General


 *s/ LeeAnn Morrill*
LEEANN MORRILL*
First Assistant Attorney General
Public Officials Unit
State Services Section
*Attorneys for Colorado Secretary of
  State Wayne W. Williams*

Ralph L. Carr Colorado Judicial
  Center
1300 Broadway, 6th Floor
Denver, Colorado  80203
Telephone:  (720) 508-6159
FAX:  (720) 508-6041
E-Mail:  leeann.morrill@state.co.us
*Counsel of Record

23

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance with Type Volume Limitation,
Typeface Requirements and Type Style Requirements,**

I hereby certify:

1) This Answer Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **3,907** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

Dated:  December 7, 2015.

CYNTHIA H. COFFMAN
Attorney General

  *s/ LeeAnn Morrill*
LEEANN MORRILL*
First Assistant Attorney General
Public Officials Unit
State Services Section
*Attorneys for Colorado Secretary of
  State Wayne W. Williams*
*Counsel of Record

24

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing Answer Brief:

1) all required privacy redactions have been made in accordance with 10th Cir. R. 25.5;

2) if require to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Endpoint Protection, and according to the program are free of viruses.

Dated:  December 7, 2015.


CYNTHIA H. COFFMAN
Attorney General


 *s/ LeeAnn Morrill*
LEEANN MORRILL*
First Assistant Attorney General
Public Officials Unit
State Services Section
*Attorneys for Colorado Secretary of
   State Wayne W. Williams*
*Counsel of Record

25

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015, I electronically filed the foregoing **THE SECRETARY OF STATE'S ANSWER BRIEF** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

| | |
|---|---|
| James O. Bardwell | jb@nagrhq.org |
| Luis A. Toro | ltoro@coloradoforethics.org |
| Margaret G. Perl | pperl@coloradoforethics.org |
| Paris Sorrell | paris.sorrell@leclairryan.com |
| David Warrington | david.warrington@leclairryan.com |
| Laurin H. Mills | laurin.mills@leclairryan.com |
| Andrew J. Narod | andrew.narod@leclairryan.com |

I hereby certify that on December 7, 2015, I have mailed or otherwise served the foregoing **THE SECRETARY OF STATE'S ANSWER BRIEF** by first class mail, postage pre-paid, or by some other consented means, to the following:

None.

*s/  LeeAnn Morrill*